*JURY TRIAL DEMANDED*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ROBERT DOMIANO, ISABEL DOMIANO, JOSH FULMER, MELANIE CHORAK, and SUZANNE ARMBRUSTER, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | |
| SCHNUCK MARKETS, INC., | ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, Robert Domiano, Isabel Domiano, Josh Fulmer, Melanie Chorak, and Suzanne Armbruster ("Plaintiffs"), through their attorneys, on behalf of themselves and all others similarly-situated, bring this action against Defendant Schnuck Markets, Inc. ("Schnucks" or "Defendant"), and in support thereof, allege and state as follows:

## I.     NATURE OF THE ACTION

1.     Plaintiffs bring this class action against Defendant for failing to secure and safeguard customers' private financial information – including credit and debit card information – and for failing to provide clear, conspicuous, and timely notice to Plaintiffs and the other members of the putative Class that their private financial information had been stolen.

2.     On March 30, 2013, Schnucks first reported that customers' private financial information had been compromised.  According to Schnucks, unknown

persons  (the "defrauders") had embedded a computer code into Schnucks' payment system that captured the magnetic strip data from customers' credit cards and debit cards, allowing those persons to obtain sensitive, private financial information from thousands of Schnucks' customers.

3.     The defrauders then used customers' private financial information to make unauthorized purchases of merchandise.  On information and belief, the defrauders also sold customers' private financial information to others for the purposes of further identity theft.  The defrauders continue to use customers' private financial information as a result of Schnucks' inadequate security and failure to protect its customers' information.

4.     Schnucks' inadequate security protocols allowed the defrauders access to its payment system in order to embed the computer code that captured customers' private financial information, thereby allowing fraud to occur and cause harm to Plaintiffs and members of the putative Class.

5.     Upon information and belief, the defrauders utilized a network of criminals to orchestrate their efforts to implement the computer code that captured customers' private financial information, and subsequently to use that information to make fraudulent charges.  It is not known at this time whether any of Schnucks' employees were involved.  In either case, Schnucks was grossly negligent in implementing and maintaining security measures to protect its customers' private financial information.

6.      Schnucks' inadequate security protocols enabled the defrauders to steal customers' private financial information from within Schnucks' own payment system.  This security failure allowed the defrauders to make unauthorized purchases using customers' private financial information, causing actual harm and exposing Schnucks' customers to a serious and ongoing risk of further fraud.

7.      Schnucks' response to the breach of its customers' private financial information did not come until at least two weeks after Schnucks claims it first became aware of it, and consisted of self-serving statements to reassure customers that it had "found and contained" the issue.  Schnucks, Schnucks Announces Credit Card Issue Found and Contained (Mar. 30, 2013), http://www.schnucks.com/pressreleases/pressrelease.asp?id=214.  Schnucks characterized itself as the "victim of a cyberattack" and touted its retroactive implementation of "comprehensive measures to contain the incident."  *Id.*

8.      Schnucks failed to disclose the extent of the data breach or promptly identify each of the affected stores.  Schnucks also failed to individually notify each of its affected customers of the data breach and failed to take other reasonable steps to clearly and conspicuously inform its customers of the nature and extent of the breach.  By failing to provide adequate notice, Schnucks prevented (and continues to prevent) putative Class members from protecting themselves.

9.      Schnucks' corporate damage control has failed to cure or otherwise mitigate the harm it has caused – and is continuing to cause – Plaintiffs and the other members of the putative Class.

3

10.    In this action, Plaintiffs, on behalf of themselves and other members of the putative Class, assert statutory claims for Schnucks' violation of the Federal Stored Communications Act, 18 U.S.C. § 2702 and the Missouri Merchandising Practices Act, Mo. Ann. Stat. §407.020, as well as the substantially similar statutes of the other states where Schnucks does business, and common law claims of negligence, negligence *per se*, and breach of implied contract.  On behalf of themselves and the other putative Class members, Plaintiffs seek injunctive relief and declaratory relief, monetary and statutory damages and attorney's fees.

## II.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States, and pursuant to 18 U.S.C. § 2707.  This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

12.    In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (d) (2) (A) because this case is a class action where the aggregate claims of all members of the putative Class are in excess of $5,000,000.00, exclusive of interest and costs, and many of the members of the putative Class are citizens of different states than Defendant.

13.    This Court has personal jurisdiction over Defendant because Defendant is registered with the Missouri Secretary of State to conduct business in the State of Missouri, and Defendant conducts substantial business in the State of

4

Missouri, such that Defendant has significant continuous and pervasive contacts with the State of Missouri.  Defendant also maintains stores and employees in the State of Missouri.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(a) and (b) because a substantial part of the events giving rise to the claims enumerated herein occurred in this judicial district.

### III.   PARTIES

15.     Plaintiff, Robert Domiano, is a citizen of Missouri who resides in University City, Missouri.  Mr. Domiano frequently shops at the Schnucks store located at 6600 Clayton Road, Clayton, Missouri.  Mr. Domiano frequently uses his credit card to make in-store purchases at Schnucks, and did so during the time frame in which customers' personal financial information was compromised while in Defendant's custody and control.

16.     Plaintiff, Isabel Domiano, is a citizen of Missouri who resides in University City, Missouri.  Mrs. Domiano frequently shops at several Schnucks store locations including: (1) 6600 Clayton Road, Clayton, Missouri; (2) 8867 Ladue, St. Louis, Missouri; (3) 5434 Southfield Center, St. Louis, Missouri; and (4) 6920 Olive Boulevard, St. Louis, Missouri.  Mrs. Domiano frequently uses her credit card to make in-store purchases at Schnucks, and did so during the time frame in which customers' personal financial information was compromised while in Defendant's custody and control.

5

17.     Plaintiff, Josh Fulmer, is a citizen of Missouri who resides in St. Louis, Missouri.  Mr. Fulmer frequently shops at the Schnucks store located at 8800 Manchester, Brentwood, Missouri.  Mr. Fulmer is a member of Schnucks' Loyalty Program and frequently uses his debit card to make in-store purchases at Schnucks, and did so during the time frame in which customers' personal financial information was compromised while in Defendant's custody and control.

18.     Plaintiff, Melanie Chorak, is a citizen of Missouri who resides in St. Louis, Missouri.  Ms. Chorak frequently shops at the Schnucks store located at 315 North 9th Street, St. Louis, Missouri.  Ms. Chorak is a member of Schnucks' Loyalty Program and frequently uses her debit card to make in-store purchases at Schnucks, and did so during the time frame in which customers' personal financial information was compromised while in Defendant's custody and control.  In approximately March 2013, Ms. Chorak's debit card was flagged by her bank, BMO Harris Bank, for being used in Virginia to make a $5.00 charge, then a $600.00 charge for a hotel room.  Ms. Chorak's bank denied the charge for the hotel room and several subsequent attempted online purchases.  Ms. Chorak was contacted by her bank, and she confirmed that she was not attempting to make the charges.  As a result, Ms. Chorak's debit card was frozen for five days, during which time she was denied access to her account and was forced to borrow money for groceries.  Ms. Chorak never recovered the initial $5.00 fraudulent charge.

19.     Plaintiff, Suzanne Armbruster, is a citizen of Missouri who resides in St. Charles, Missouri.  Ms. Armbruster frequently shops at the Schnucks store

6

located at 1950 Zumbehl Road, St. Charles, Missouri.  Ms. Armbruster frequently uses her debit and credit cards to make in-store purchases at Schnucks, and did so during the time frame in which customers' personal financial information was compromised while in Defendant's custody and control, including approximately eight such purchases since January 1, 2013.  After using her credit or debit card at Schnucks, Ms. Armbruster was contacted by her bank, Chase, who alerted her to suspicious activity on her account.  Ms. Armbruster confirmed that she was not attempting to make the suspicious charges.  In response, Chase canceled Ms. Armbruster's credit card and issued her a new card.

20.     Defendant, Schnuck Markets, Inc., is a Missouri corporation with its principal place of business in St. Louis, MO.  Schnucks operates 100 stores and 96 in-store pharmacies in Missouri, Illinois, Indiana, Wisconsin, and Iowa.

## IV.    FACTS

21.     Plaintiffs and other Schnucks' customers are subject to continuing damage due to having their private financial information compromised because of Schnucks' inadequate security.  In order to attempt to mitigate their damages, Schnucks' customers must have clear, conspicuous, and prompt notification regarding the breaches.  Schnucks has failed – and continues to fail – to take reasonable steps to notify its customers that their private financial information was compromised while in Schnucks' care and custody.  By its inaction, Schnucks is effectively preventing its customers from protecting themselves against the breach of their private financial information by Schnucks.

22.     Schnucks has failed to directly notify Plaintiffs or other individual putative Class members about its data breach.  Schnucks has failed to post signs in each of its affected stores, or even to publish a list of affected stores, to attempt to notify returning customers and to allow them to determine if their private financial information may have been compromised, and whether they are at risk of becoming victims of fraudulent activity.

23.     On March 30, 2013, at least two weeks after Schnucks claims it first became aware of the data breach, Schnucks finally issued a press release regarding the data breach.  Schnucks, http://www.schnucks.com/pressreleases/pressrelease.asp?id=214.

24.     In its press release, Schnucks touted its "comprehensive measures to contain the incident," and urged customers to "remain vigilant" and "monitor [their] credit reports."  *Id.*  Schnucks stated multiple times in this release that customers can continue to use their credit and debit cards at Schnucks.  However, Schnucks would not commit to saying that using a credit or debit card at Schnucks is safe, instead saying that "[t]he issue has been identified and contained.  The comprehensive measures . . . are designed to block this attack from continuing.  Customers may continue to use their credit and debit cards at our stores."  *Id.*

25.     Rather than provide Plaintiffs and its other customers with the information they need to protect themselves, Schnucks touted its "comprehensive measures to contain the incident."  *Id.*  Schnucks continued to urge customers to continue using their credit and debit cards at Schnucks, even though it was not

8

willing to commit to definitively saying further breaches would not occur.  Until adequate information is released, Plaintiffs and members of the putative Class will remain unable to determine whether their private financial information was compromised until they are victims of fraudulent activity.

26.     Rather than take responsibility for its inadequate security that allowed the data breach to occur, Schnucks has placed the burden on its customers, and expressly urged them to self-monitor their financial accounts.  *Id.*  Schnucks has neither offered credit monitoring or identity theft protection assistance to Plaintiffs or the putative Class, nor taken any steps to compensate them for the damages cause by its misconduct.

## V.   CLASS ACTION ALLEGATIONS

27.     Plaintiffs seek to represent a class defined as:

> All persons in the United States who made an in-store purchase at a Schnucks store in the United States using a debit or credit card during the time that the security of Schnucks payment system was breached.

Excluded from this Class are Schnucks' affiliates, parents, subsidiaries, employees, officers, agents, and directors.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

28.     Members of the putative Class are so numerous that their individual joinder is impracticable. On information and belief, there are thousands of Schnucks customers who suffered a loss of money and breach of security.  Class members may be notified of the pendency of this action by mail, email and/or publication notice.

29.    Common questions of law and fact exist as to all members of the putative Class and predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

a.    Whether Schnucks failed to use reasonable care and commercially reasonable methods to secure and safeguard its customers' private financial information;

b.    Whether Schnucks properly implemented its purported security measures to protect consumers' private financial information from unauthorized capture, dissemination and misuse;

c.    Whether Schnucks took reasonable measures to determine the extent of the security breach after it first learned of the same;

d.    Whether Schnucks' delay in informing consumers of the security breach was unreasonable;

e.    Whether Schnucks' method of informing consumers of the security breach and its description of the breach and potential exposure to damages as a result of the same was unreasonable;

f.    Whether Schnucks' conduct violates the Stored Communications Act, 18 U.S.C. § 2702;

g.    Whether Schnucks' conduct violates the Missouri Merchandising Practices Act, Mo. Ann. Stat. §407.020 and the substantively similar statutes of the other states where Schnucks conducts business;

h.      Whether Schnucks' conduct constitutes negligence or negligence *per se*; and

i.      Whether Plaintiffs and the putative Class are entitled to damages, injunctive relief, and other relief.

30.     Plaintiffs' claims are typical of the claims of the putative Class.  Each putative Class member was subjected to the same illegal conduct, was harmed in the same way, and has claims for relief under the same legal theories.

31.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

32.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Schnucks' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial systems presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on

11

the issue of Schnucks' liability.  Class treatment of the liability issues will ensure

that all claims and claimants are before this Court for consistent adjudication of the

liability issues.

### COUNT I – VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT, 18 U.S.C. § 2702

33.    Plaintiffs repeat, reallege, and incorporate paragraphs 1-32 in this

Complaint as if fully set forth herein.

34.    This first claim for relief is brought against Defendant by Plaintiffs

individually and on behalf of the putative Class.

35.    The Stored Communications Act ("SCA") contains provisions that

provide consumers with redress if a company mishandles their electronically stored

information.  The SCA was designed, in relevant part, "to protect individuals'

privacy interests in personal and proprietary information."  S. Rep. No. 99-541, at 3

(1986), *reprinted in* 1986 U.S.C.C.A.N. 3555 at 3557.

36.    Section 2702 (a) (1) of the SCA provides "a person or entity providing

an electronic communication service to the public shall not knowingly divulge to any

person or entity the contents of a communication while in electronic storage by that

service."  18 U.S.C. § 2702 (a) (1).

37.    The SCA defines "electronic communication service" as "any service

which provides to users thereof the ability to send or receive wire or electronic

communications."  *Id.* at § 2510(15).

38.    Through its payment processing equipment, Schnucks provides an

"electronic communication service to the public" within the meaning of the SCA

12

because it provides consumers at large with credit and debit card payment processing capability that enables them to send or receive wire or electronic communications concerning their private financial information to transaction managers, card companies, or banks.

39.    By failing to take commercially reasonable steps to safeguard sensitive private financial information, Schnucks has knowingly divulged customers' private financial information that was communicated to financial institutions solely for customers' payment verification purposes, while in electronic storage in Schnucks' payment system.

40.    Section 2702 (a) (2) (A) of the SCA provides "a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service."  18 U.S.C. § 2702 (a) (2) (A).

41.    The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communication system."  18 U.S.C. § 2711(2).

42.    An "electronic communications systems" is defined by the SCA as "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or

related electronic equipment for the electronic storage of such communications."  18 U.S.C. § 2510(4).

43.     Schnucks provides remote computing services to the public by virtue of its computer processing services for consumer credit and debit card payments, which are used by customers and carried out by means of an electronic communications system, namely the use of wire, electromagnetic, photooptical or photoelectric facilities for the transmission of wire or electronic communications received from, and on behalf of, the customer concerning customer private financial information.

44.     By failing to take commercially reasonable steps to safeguard sensitive private financial information, Schnucks has knowingly divulged customers' private financial information that were carried and maintained on Schnucks' remote computing service solely for the customer's payment verification purposes.

45.     As a result of Schnucks' conduct described herein and its violations of § 2702 (a) (1) and (2) (A), Plaintiffs and putative Class members have suffered injuries, including lost money and the costs associated with the need for vigilant credit monitoring to protect against additional identity theft.  Plaintiffs, on their own behalf and on behalf of the putative Class, seek an order awarding themselves and the Class the maximum statutory damages available under 18 U.S.C. § 2707 in addition to the cost for 3 years of credit monitoring services.

## COUNT II – VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT AND SUBSTANTIALLY SIMILAR STATUTES OF THE OTHER STATES WHERE DEFENDANT DOES BUSINESS

46.     Plaintiffs repeat, reallege, and incorporate paragraphs 1–32 in this Complaint as if fully set forth herein.

47.     This second claim for relief is brought against Defendant by Plaintiffs, individually and on behalf of the putative Class.

48.     Schnucks violated the Missouri Merchandising Practices Act, Mo. Ann. Stat. §407.020 and the substantially similar statutes of the other states in which it conducts business by failing to properly implement adequate, commercially reasonable security measures to protect customers' private financial information, and by failing to immediately notify affected customers of the nature and extent of the security breach.

49.     Schnucks' fraudulent and deceptive omissions were intended to deceive and induce Plaintiffs and the putative Class members' reliance on the misinformation that their financial information was secure and protected when using debit and credit cards to shop at Schnucks' stores.

50.     Schnucks' unlawful misrepresentations and omissions occurred in the course of conduct involving trade or commerce.

51.     Schnucks' unlawful misrepresentations and omissions were material because Plaintiffs and the other putative Class members, if they had known the truth, would not have risked compromising their private financial information by using their debit or credit cards at Schnucks stores.  Plaintiffs and the other

15

putative Class members would consider the omitted and misrepresented material facts important in making their purchasing decisions.

52.    Schnucks' unlawful misrepresentations and omissions damaged Plaintiffs and the other putative Class members because they would not have chosen to expose their private financial information to a security breach and subsequent exploitation by the defrauders.

53.    Plaintiffs, individually and on behalf of the putative Class, seek an order requiring Defendant to pay:

        a.   monetary and punitive damages for the conduct described herein;

        b.   three years of credit card fraud monitoring services for Plaintiffs and members of the putative Class; and

        c.   Plaintiffs' reasonable attorney's fees and costs of suit.

## COUNT III - NEGLIGENCE

54.    Plaintiffs repeat, reallege, and incorporate paragraphs 1-32 in this Complaint as if fully set forth herein.

55.    This third claim for relief is brought against Defendant by Plaintiffs, individually and on behalf of the putative Class.

56.    By agreeing to accept Plaintiffs' and putative Class members' private financial information through its payment processing services, Schnucks assumed a fiduciary duty, which required it to exercise reasonable care to secure and safeguard that information and utilize commercially reasonable methods to do so.

16

57.     Schnucks breached its duty of care by failing to provide adequate security, and failing to protect Plaintiffs' and putative Class members' private financial information from being captured, accessed, disseminated and misused by a third party.

58.     Schnucks also breached its duty of care by failing to provide prompt and clear notification to Plaintiffs and members of the putative Class that their private financial information had been compromised.

59.     As a direct and proximate result of Schnucks' failure to exercise reasonable care and use commercially reasonable security measures, Schnucks turned Plaintiffs and other putative Class members into targets for identity theft, and Plaintiffs' and the putative Class' private financial information and bank account monies were, in fact, stolen.

60.     As a direct and proximate result of Schnucks' misconduct, Plaintiffs and putative Class members were injured because they suffered theft of money and private financial information, and they incurred the additional costs associated with increased risk of identity theft, all of which have ascertainable value to be proven at trial.

61.     Plaintiffs and members of the putative Class have suffered injury in fact, including money damages, and will continue to incur damages as a result of such negligence.

## COUNT IV – NEGLIGENCE *PER SE*

62.    Plaintiffs repeat, reallege, and incorporate paragraphs 1-32 in this Complaint as if fully set forth herein.

63.    This fourth claim for relief is brought against Defendant by Plaintiffs, individually and on behalf of the putative Class.

64.    Schnucks' violation of the Stored Communications Act, 18 U.S.C. § 2702 and the Missouri Merchandising Practices Act, Mo. Ann. Stat. §407.020 and the substantially similar statutes of the other states where Schnucks conducts business, was a result of Schnucks' negligence and resulted in injury to Plaintiffs and the putative Class.

65.    The harm Schnucks caused to Plaintiffs and the putative Class resulted from the type of occurrences the statute was designed to prevent.

66.    Plaintiffs and the putative Class are the type of persons for whose protection the statute was adopted.

67.    Schnucks' violations of the foregoing statutes as described herein resulted in injury to Plaintiffs and putative Class members.  Plaintiffs and the putative Class members suffered theft of money and private financial information, and they incurred the additional costs associated with increased risk of identity theft, all of which have ascertainable value to be proven at trial.

## COUNT V – BREACH OF IMPLIED CONTRACT

68.    Plaintiffs repeat, reallege, and incorporate paragraphs 1-32 in this Complaint as if fully set forth herein.

69.     The fifth claim for relief is brought against Defendant by Plaintiffs, individually and on behalf of the putative Class.

70.     Schnucks' customers who were interested in making in-store purchases with debit or credit cards were required to provide their card's magnetic strip data for payment verification.

71.     In providing such financial data, Plaintiffs and members of the putative Class entered into an implied contract with Schnucks whereby Schnucks became obligated to reasonably safeguard their private financial information.

72.     Under the implied contract, Schnucks was obligated to not only safeguard customers' private financial information, but also to provide customers with prompt, adequate notice of any security breach or unauthorized access of said information.

73.     Schnucks breached the implied contract with Plaintiffs and members of the putative Class by failing to take reasonable measures to safeguard their private financial information.

74.     Schnucks also breached its implied contract with Plaintiffs and putative Class members by failing to provide prompt, adequate notice of the security breach and unauthorized access of their private financial information by the third-party defrauders.

75.     Plaintiffs and putative Class members suffered and will continue to suffer damages including, but not limited to loss of their private financial

information, loss of money and costs incurred as a result of increased risk of identity theft, all of which have ascertainable value to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the putative Class, pray: (1) for all forms of relief set forth above; (2) for an order certifying the putative Class and appointing Plaintiff and their counsel of record to represent the Class; (3) for actual damages; (4) for compensatory damages; (5) for consequential and statutory damages; (6) for an order requiring Defendant to immediately pay for credit card fraud monitoring services for Plaintiffs and members of the Class; (7) punitive damages; (8) for costs of suit herein; (9) for both pre- and post-judgment interest on any amounts awarded; (10) for payment of reasonable attorney's fees; and (11) for such other relief as the Court may deem necessary and proper.

**JURY TRIAL DEMANDED**

Date:  April 11, 2013

Respectfully submitted,

ROBERT DOMIANO, ISABEL
DOMIANO, JOSH FULMER,
MELANIE CHORAK, and
SUZANNE ARMBRUSTER

By:   /s/ Matthew H. Armstrong
One of their attorneys

Matthew H. Armstrong
Armstrong Law Firm, LLC
8816 Manchester Rd., No. 109
St. Louis, MO 63144
Telephone: 314-258-0212

Richard J. Doherty
Daniel J. Cohen
Bock & Hatch, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500

Max G. Margulis,
Margulis Law Group
28 Old Belle Monte Rd.
Chesterfield, MO 63017
Telephone: 636-536-7022

Attorneys for Plaintiff